3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

ETHAN ROBERT PODRY,
JAMES COLBURN,
WILLIAM HOUSTON PARRY,
DONALD LEROY MANNING,
JOSHUA LYLE,
ANTHONY LEE MAIER, Jr.,
BERNARD JAMES FITZPATRICK,
TIMOTHY LEWIS,
JOSHUA DISKIN,
CHARLES MIESMER,
JOSHUA URIAH PIERRE,
WILLIAM ELIJAH,
TIMOTHY HAWTHORNE,
JOHN NEMETZ,
JAMES CHURCH,
BRIAN HOLM,
THOMAS PARK,
BRIAN NORVELL,
PHILLIP PIERRE,
RAMIN RUDESEAL,
DANIEL JAY DODSON,
NATIVIDAD BRATTAIN,
JORGE MARRERO,
DAVION JONES,
JACOB DEAN DALAGER,
MICHAEL M. MILLER,
BRETT LOCKHART,
CHRISTOPHER KING,
ANTHONY COX,
TORREY HAGINS,

PETITIONER/ PLAINTIFFS
EN MASSE
PETITION for
WRIT OF
HABEAS CORPUS
AS PER
28 USC §2254
and
Rule 20(a)
and
Rule 23
of the FEDERAL RULES of
CIVIL PROCEDURE
****************
SUPPLEMENTAL PETITION
TO
LIONEL SCOTT ELLISON, et al
        Petitioners,
   vs.
MICHEAL FLETCHER, Warden, (FIRED)
        Respondent.

RECEIVED

JAN 31 2018

Clerk, U.S. District Court
District of Montana
Missoula

   Petitioner/ Plaintiff

   vs.

JAMES SALMONSON, INTERM WARDEN,
(Montana State Prison)

        Respondent/ Defendent

COVER PAGE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| ETHAN ROBERT PODRY AO# 3013746<br>JAMES COLBURN AO# 3012833<br>WILLIAM HOUSTON PARRY AO# 26431<br>DONALD LEROY MANNING AO# 2121759<br>JOSHUA LYLE AO# 3010403<br>ANTHONY LEE MAIER, Jr. AO# 3001568<br>BERNARD JAMES FITZPATRICK AO# 3001568<br>TIMOTHY LEWIS AO# 2020848<br>JOSHUA DISKIN AO# 3017491<br>CHARLES MIESMER AO# 3015323<br>JOSHUA URIAH PIERRE AO# 3013338<br>WILLIAM ELIJAH AO# 3021622<br>TIMOTHY HAWTHORNE AO# 2116014<br>JOHN NEMETZ AO#2128278<br>JAMES CHURCH AO# 2081727<br>BRIAN HOLM AO# 3008046<br>THOMAS A. PARK AO# 37387<br>BRIAN NORVELL AO# 3017311<br>PHILLIP PIERRE AO# 15959<br>RAMIN RUDESEAL AO# 3014532<br>DANIEL JAY DODSON AO# 3007167<br>NATIVIDAD BRATTAIN AO#3012418<br>JORGE MARRERO AO# 44558<br>DAVION JONES AO# 3019649<br>JACOB DEAN DALAGER AO# 3008606<br>MICHAEL M. MILLER AO# 2145075<br>BRETT LOCKHART AO# 3020771<br>CHRISTOPHER KING AO# 3017677<br>ANTHONY COX AO# 3019485<br>TORREY HAGINS AO# 3009921 | PLAINTIFF/ PETITIONERS<br>EN MASSE<br>PETITION for<br>WRIT OF<br>HABEAS CORPUS - 28 USC §2254<br>as per RULE 23 of<br>THE FEDERAL RULES OF<br>CIVIL PROCEDURE<br>**********<br>SUPPLEMENTAL PETITION<br>TO<br>LIONEL SCOTT ELLISON, et al,   vs.<br>MICHEAL FLETCHER, WARDEN(FIRED) |

| | |
|---|---|
| CONFINED AT:<br>MONTANA STATE PRISON<br>700 CONLEY LAKE RD.<br>DEER LODGE, MONTANA<br>59722 | CAUSE NO:<br><br>DATE FILED: |

## I. INTRODUCTION STATEMENT

Comes now the above named Plaintiffs, to hereby bring forth this en masse Petition for Writ of Habeas Corpus, using the Federal Rules of Civil Procedure, Rule 23- Class Action, as an 'anologue' format, as is allowed by the Ninth Circuit of the United States Court of Appeals. This Montana District is a District of the Ninth Circuit. See Ali v. Ashcroft, 346 F.3d 873, 888-91(9th Cir. 2003), allowing this action, as a en masse Petition for Writ of Habeas Corpus under 28 USC §2254.

The above named Plaintiffs, are not attorney's and conjoin each of their claims in this matter due to the global basis of eachs claim being exactly the same. This en masse Petition is to save the Court time, effort and funding.

The above named Pro se Plaintiffs ask this Court to be Liberal and suspend any Rule or procedure that stands in the way of Justice, and the Plaintiffs limited 'Layman' abilities to substantiate their claims of Constitutional Rights Violations en masse.

-1-

This request for Liberal review is based upon the U.S. Supreme Court decision in Haines v Kerner, 404 US 519, 30 L. ED 632, 92 S.Ct. 594 (1972), that is the standard set by the courts in Pro se Litigation. Haines states, "A pro se complaint 'however artfully pleaded' must be held to a less stringent standard than the formal pleadings drafted by lawyers, and can only be dismissed for failure to state a claim, if it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which entitle him to relief." Id at 520-21. The Ninth Circuit has concurred with Haines in its ruling in Allen v Caldron, 408 F.3d 1150, 1153 (9th Cir.2005).

Through the Supremacy Clause of the US Constitution all Courts must abide by the decisions of the U.S. Supreme Court.

As citizens of the State of Montana, the Plaintiffs and the Respondents must abide by U.S. Constitutional and Montana Constitutional Law and Statutes. The Plaintiffs are well aware of the State of Montanas noted Historical Reputation, as cleary stated by one of the Nations most Noted Statesman:

"Montana is a great state, if you can get past the Corruption."--Mark Twain.

The Plaintiffs first begin by addressing the Blatent and Flagrent violations of both Montana and U.S. Constitutional guaranteed rights that are clearly present in the Montana '[in]justice system', such as Art. II, Section 20 of the Montana Constitution which is a complete and absolute contradiction to; and is directly contravening with the U.S. Constitutions Fifth Amendments guarantee of a Grand Jury Indictment OR a Preliminary Hearing. In fact, Art. II, Sec 20 is completely lacking of enforceable definative language guaranteeing ANY RIGHT, other than that of being prosecuted in the full absense of the 'Full Panoly of Adversarial Safeguard' guaranteed by the Constitution of the United States. It is not sufficient enough of an'adversarial safeguard' to have mere wording in a 'MCA' (MONTANA CODES ANNOTATED) that a Grand Jury Indictment or 'Preliminary Examination - when held' (MCA §46-10-105) to guarantee the right to 'Due Process'. Either a Grand Jury Indictment or a Preliminary Examination actually needs/ must be held to even begin to present or guarantee that a Constitutional Right to Due Process is upheld.

This above is the essence of the Plaintiffs complaint.

The above named Plaintiffs, hereby officially Challenge the Constitutionality of the State of Montana's Judicial System, its Courts, Procedures and Rules as have been written by the State of Montana Legislature as being Constitutionally inadequate and violates each of the Plaintiff/ Petitioners Constitutional Rights that are Guaranteed by the U.S. and Montana Constitutions.

Grand Jury Indictments and/or Preliminary Examinations simply do not exist in the State of Montana Court/ Judicial system at any level especially at the District

Court level.  Were those proceedings actually to be held, in
place of corrupt prosecutor's 'Informations' that are presented
and agreed to behind closed doors absent the right of cross
examination or any other 'panoply of adversarial safeguards' by
the collusion of an often equally corrupt Judge, there would
surely, (and rightfully so), be far fewer illegal and/or unlaw-
ful prosecutions in Montana's Courts.  However, Montana seems
to be of the opinion that it is not obligated to obey Federal
Laws and/or Constitutional Rights, unless there are Federal
funds that are of benefit to the State.

> "As does the Fifth Amendment of the Consti-
> tution, Rule 7(a) requires that all felonies be
> charged by grand jury indictment, unless waived
> by the defendant, misdemeanors may be charged by
> information.  Capital cases must be charged by
> indictment." - U.S. v. Cooper, 91 F.Supp. 2d 90,
> 104 (D.D.C. 2000)
> "Under the grand jury clause of the Fifth
> Amendment, a defendant has a right to [62 F.3d
> 1194] be tried only on the grand jury's indict-
> ment." - U.S. v. Olson, 925 F.2d 1170, 1175 (9th
> Cir. 1991).

'Due Process of Law' is an essential and fundamental tenet
of the United States Constitution, and indeed the Montana Con-
stitution, (Art. II, Sec. 17), and yet it is also one of the
most ignored!  The use of the same Judge throughout the crimi-
nal proceeding is highly prevalent in the State of Montana's
District Courts, and also unlawful.  When a Judge is part of
the accusatory process of an 'Information' and then continues
on in any further proceedings of that case, a pre-determina-
tion of guilt may be presumed to have been established, which
is Constitutionally intolerable.  The lack of neutrality and/or
impartiality of State Judges and Magistrates is perhaps one of
the biggest offenses to and violations of the 'Due Process'
clause, as well as that of the 'equal protection' clauses of
both State and Federal Constitutions.  However, it is fully
understood and demonstrated that these two important and essen-
tial clauses of judicial operation are in direct contrast to

-3-

the financial desires and needs of the state and its judicial system. The judicial system in Montana has clearly become a corrupt tool to fill the State's (and other's) coffers with taxpayer (both state and federal) and federal funds, at the expense of its own citizens. Through the use of myriad unlawful and downright illegal acts and actions, law enforcement and the Courts have become a lucrative financial tool, designed to create 'profit centers' using the justice system as a 'conviction mill' to keep prisons full.

> Marshall v. Jerrico, Inc., 446 U.S. 238, 64 L.Ed2d 182, 100 S.Ct 1610 (1980) - 'The Due Process Clause entitles a person to an impartial and disinterested tribunal in both Civil and Criminal cases. This requirement of neutrality in adjudication proceedings safeguards the two central concerns of procedural due process - the prevention of unjustified or mistaken deprivations, and the promotion of participation and dialogue by affected individuals in the decision making process.'
> Carey v. Piphus, 435 U.S. 247, 259-262, 98 S.Ct 1042, 1043 (1928) - 'The neutrality requirement helps to guarantee that Life, Liberty, or Property will not be taken on the basis of an erroneous or distorted conception of the facts or the law.'

In many cases across Montana, it is evident that evidence has been manufactured or fabricated to support the charges that have been filed, and aid in the conviction process. This is of course easily done through the denial of guaranteed rights of 'Due Process' and 'Equal Protection' of either a Grand Jury Indictment or Preliminary Examination. In Montana, one only needs the 'speculation' of law enforcement, the fantasy of a prosecutor's Information, and the agreement of a complicit Judge - all done behind closed doors and absent of the right of cross examination - to start the corrupt process of being convicted in Montana's Courts.

> "Defendants have a due process right to an unbiased Judge. Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 883-884 (2009). The due process bias inquiry is an objective one that re-

quires NO proof of actual bias. Caperton, 556
U.S. at 883.  The inquiry is "whether, under real-
istic appraisal of psychological tendencies and
human weakness, the interest poses such a risk of
actual bias or prejudgment that the practice must
be forbidden if the guarantee of due process is
to be adequately implemented. Reichert v. State
ex rel McCulloch, 2012 MT 111, 28, 365 Mont. 92,
278 P.3d 455 (quoting Caperton, internal quota-
tion omitted)"

When combined with the use of an 'appointed' Public De-
fender and often with private counsel as well, the recently
discovered use of illegal 'strategies and tactics' of excluding
exculpatory evidence in lieu of fabricated inculpatory evidence
can begin, and often to include the immediate coercive 'recom-
mendation' of a plea agreement can begin in the further aid of
'gaining' another conviction for the State.  This is seemingly
an often repeated activity, if not indeed a standard practice
in many Montana judicial venues across the State.  This is also
a criminally actionable offense, and is purportedly now being
investigated by Federal Authorities.

> "government lawyers have a higher competing
> duty to act in the public interest...Their com-
> pensation comes not from a client whose interests
> they are sworn to protect from the power of the
> State, but from the State itself and public fisc.
> It would be both unseemly and a misuse of public
> assets to permit a public official to use a tax-
> payer-provided attorney to conceal from the tax-
> payers themselves otherwise admissable evidence
> of wrongdoing, official misconduct, or abuse of
> power." - Upjohn Company v. U.S., 449 U.S. 383
> (1981).

The actions of the Appellate Defenders Office is seemingly
of this same type of corruption as is now being discovered and
investigated as part of the Public Defender's Office.  Sadly,
this is just the tip of the 'Iceberg' of many of the long in
place, and recently discovered acts taking place in Montana's
justice, judicial and prison systems.  When and until the State
legislature of Montana is fully prepared to address and cease
these and many other issues of corruption and conspiracy, the

problems within this State will only continue to get worse, and the need for more 'lipstick' will be necessary.

> "A democratic society in which respect for the dignity of all men is central, neutrality guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the over-zealous as well as the despotic. The awful instruments of law cannot be entrusted to a single functionary." - McNabb v. U.S., 318 U.S. 332, 343, 87 L.Ed 819, 63 S.Ct 608 (1943).

To add insult to injury, the 'cherry picking' and wrongful use of case law by the Montana Attorney General (Tim Fox) and Montana Supreme Court (Mike McGrath) is also a severely dispicable and abysmal act of corruption and conspiracy to keep inmates from seeking or receiving any form of actual lawful redress or justice. In case after case, the erroneous and flat out misstatements (LIES) of actual law have and are continuing to prevent actual justice to take place. Equally, the misuse and 'twisting' of MCAs and Constitutional Law is not only a severe indication of the corruption and conspiracies blatantly present in Montana, but also the disgusting and flagrant manifestation of gross miscarriages of justice so highly prevalent within the State of Montana.

> "[A] conspiracy is like a train. When a party knowingly steps aboard, he is part of the crew, and assumes conspirator's responsibility for the existing freight - or conduct - regardless of whether he is aware of just what it is composed." U.S. v. Baines, 812 F.2d 41, 41 (1st Cir. 1987), Accord U.S. v. Farhane, 634 F.3d 127, 161 n.35 (2nd. Cir. 2011).
> "Once a conspiracy is established, evidence of only slight connection with it is sufficient to establish a defendant's participation in it." U.S. v. Castaneda, 16 F.3d 1504, 1510 (9th Cir. 1994).
> "Connection to a conspiracy may be inferred from circumstantial evidence." Foster, 985 F.2d at 469.

Even seemingly innocent acts, "when viewed
in context, may support an inference of guilt."
U.S. v. Mares, 940 F.2d 455, 458 (9th Cir. 1991).

The use of unlawful legislation and unlawful Supreme Court
rulings to violate and negate legitimate inmate claims of their
Constitutional Rights is not only shameful, but also plausibly
criminal in nature.   In Garrymore v. Frink, 374 Mont. 539; 2014
Mont. LEXIS 219, the demonstrated use of one Constitutional
violation as a 'permission giving statement' to violate yet
another Constitutional Right is illegal and dispicable.   Then
to continue on to 'cherry pick' the verbiage of the ruling in
Lott v. State, 2006 MT 279, 334 Mont. 270, 150 P.3d 337, to
preclude and wrongfully deny an inmates rights, by stating that
the ruling said one thing, when in fact, Lott, supra, stated
the exact opposite of what the Supreme Court stated.   The MCA
46-22-101(2) was in fact found to be 'unconstitutional,' and in
fact an unlawful article of legislation, but it is still being
used to deny inmate rights to a habeas corpus to this day!   In
Payne v. Frink, 944 F.Supp.2d 967; 2013 U.S. Dist. LEXIS 70659,
¶ 59-60, there is a Federal Court reference questioning why
Payne's direct appeal relied 'exclusively on state law.'   On
page 13 of the Montana State Supreme Court's 'Civil Handbook,'
it is clearly stated:

> "You must tell the Supreme Court the proper
> standard of review for each issue you raise.
> Give the name of at least one case that shows you
> have identified the correct standard.   This is
> called "citing legal authority."
> Only cite published Montana Supreme Court
> Opinions.   If the first paragraph of an opinion
> states that it "shall not be cited as precedent,"
> it is a non-published opinion and you may not
> cite it.   Examples of case citations are:
> In re Marriage of Maxwell, 248 Mont. 189, 810 P.2d
> 311 (1991).
> State v. Abe, 1998 MT 206, 290 Mont. 393, 965 P.2d
> 882.
> The Argument section of your brief is where
> you explain why the district court wrongly de-
> cided each of the issues you raise.   Make your
> argument as understandable as possible.   You must
> recite the facts and law that support each argu-
> ment.   Refer to Montana case law, statues, rules,

or sections of the Montana constitution that
support your argument."

As noted in Payne, supra, at ¶ 59-60, the exclusion of a
federal law claim or legal cite in a direct appeal, may and
often does, preclude the furtherance of a federal claim under
federal law - and yet the clear 'directions' in the 'Civil
Handbook' used as the 'lawful' guideline for a Direct Appeals,
plainly states that ONLY Montana State Supreme Court case cites
can be used.  Another blatant and flagrant attempt by Montana's
Judicial system to violate and/or preclude and deny Constitu-
tional Rights.

> "Experience hath shown, that even under the
> best forms of [government], those entrusted with
> power, have, in time, and by slow operation,
> perverted it into tyranny." - Thomas Jeffereson,
> 3rd President of the United States - 1743-1826.
> "If the government, police and prosecutors
> could always be trusted to do the right thing,
> there would have never been a need for the Bill
> of Rights." - U.S. v. U.S. District Court for the
> Central District of California, 858 F.2d 534 (9th
> Cir. 1988). - Ninth Circuit Justice Levanthal.

The acts of legal misconduct, malice, prejudice, bias and
moral turpitude are highly indicative of the corrupt judicial,
prison and justice systems of the State of Montana.  At nearly
every turn, there are clearly evident acts of illegal criminal
acts equally present by these same government organizations.
If this committe is truly interested in looking past the facade
of deception and getting to the true root of the matters that
are plaguing the Montana Criminal 'injustice' system, it must
be prepared to dig deeper, and face the ugly truths of this
State, and have the intestinal fortitude to actually DO some-
thing to bring about REAL and POSITIVE change to those systems.
Inquiry cannot be made of those who stand to financially profit
the most from keeping the status quo, you must ask those most
affected where to seek the answers, and where to find the true
solutions.

The use of fabricated, non-existent, or erroneous evidence

in the course of criminal proceedings by prosecutors is highly prevalent in Montana, and it is also highly illegal. But this has become the stock and trade of too many prosecutors in this State, and has created an issue, "[t]hat seriously effects the fairness, integrity, [and]/or public reputation of judicial proceedings." U.S. v. Boykin, 669 F.3d 467, 470 (4th Cir. 2012) "[W]hile he may strike hard blows, he is not at liberty to strike foul ones." - U.S. Supreme Court in reference to prosecutors, Berger v. U.S., 295 U.S. 78, 88 (1935). "Each year, thousands of Americans are victimized by prosecutors who overcharge, withhold key evidence, and engage in myriad of other forms of professional misconduct." - 2013 Report from Center for Prosecutor Integrity. 'Most commonly cited type of prosecutorial misconduct in wrongful conviction cases involves withholding of exculpatory evidence (Brady violations).' It has also been found (even and especially in Montana), that Proscutors, "break laws themselves, using their position of authority to further their own personal interests." - November, 2014 Prison Legal News, Vol. 25, No. 11, 'Taking the Justice Out of Criminal Justice,' by Christopher Zoukis. These acts in Montana have recently been turned over to Federal Bureau of Investigations, U.S. Department of Justice, and the U.S. Attorney General for redress, as the aforementioned tactics are and have been used to usurp, violate, and prevent legal redress through State legal channels. These acts of moral turpitude and criminality are far too prevalent in Montana, and are far too often found to be, "involving reckless disregard to or intentional violation of law, rule, [and]/or ethical standard." - Zoukis.

"The prosecutor has more control over life, liberty, and reputations than any other person in America. His discretion is tremendous...While the prosecution at his best is one of the most beneficent forces in our society; when he acts from malice or other base emotions, he is one of the worst." - Former U.S. Attorney General Robert Jackson.

The highly questionable, and quite likely unlawful actll of the
Board of Pardons and Paroles (BOPP) that have been committed for
decades by a largely unlegislated and wholly unaccountable organi-
zation - also using closed door and unfettered unlawful tactics to
extend or enhance sentences has only recently (2015) come under any
form of 'control.'  The use of non-factual based subjective opinion
to decide the fate of someone's liberty is unconstitutional at best
and unconscionable at worst, if not indeed illegal.  How many have
been unjustly and illegally kept in confinement by this vindictive
and malicious organization?  Or does this committee actually seek
to know that truth?

   "Distrust all in whom the impulse to punish is
   powerful." - Friedrich W. Nietzllche - German Philosopher.

A 'grant' of parole or probation is pointless and without any
effect if the BOPP places so many ridiculous and unjustifiable
restrictions on that 'granted' parole so that the inmate does not
or cannot gain release.  There are numerous, purportedly hundreds
of these such cases, where inmates, mostly Sex Offenders, who have
homes and employment in place, but are denied by the BOPP the real
opportunity to return to those situations.  Equally, many in tholle
same situations are given Pre-Release 'recommendations,' that are
essentially a joke, as the Pre-Release centers arbitrarily deny the
person granted parole acceptance, thus causing a negation of the
granting of parole.  Many of these Pre-Release Centers are private-
ly owned, and in strict violation of Constitutional Rights.  These
Pre-Release centerll are with few exceptions, exclusive of Sex Off-
enders, as a tool of yet another 'witch hunt' in complicity with
the Prison Profit' system.  This is a highly discriminatory prac-
tice that is based on fictional and fear based deceptions, and
perpetrated by the 'justice' system's zealots and despots.  The
true actuality of the situation is far different from the false-
hoods presented and promulgated to the public.  The need for true
reality based factual data to make accurate decisions, and to edu-
cate the public is desperately needed.  But it is doubtful that any
change in those practicell will change, as it seems to be the stock
and trade practice in Montana, as there is no profit in truth for
the 'Prison Profit Sytem' or State coffers.

"Mere public intolerance or animosity cannot constitutionally justify the deprivation of a person's physical liberty." O'Connor v. Donaldson, 422 U.S. 563, 45 L.Ed2d 396, 95 S.Ct 2486 (1975).

The use of highly prohibitive and unrelated to 'Nexus of the Crime' conditions of release are just another tool to create recidivism and revocations for the 'Prison Profit' system, or so it seems. With 85% of the inmates in prison because of revocation, as stated by Department of Correction Director Mike Batista, it is clearly evident that these restrictions are excessive, and in many cases, not related to the nexus of the crime, as is the requirement of the Montana Supreme Court's ruling in both State v. Ommundson, 1999 MT 16, 293 Mont. 133, 974 P.2d 620; and State v. Ashby, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164. But these tactics are still used systematically to create a higher incidence of revocations, plausibly to keep the 'Prison Profit System' rolling at full steam. If the prohibitions placed arbitrarily on those paroled were of a more justifiable, sensible and amicable nature, it is fully plausible that the 2,574 inmates in prison (Montana Standard article), could be lowered by nearly the 85% revocation rate. That alone would lower the prison population to roughly a 'mere' 400-500 inmates - allowing for the closure of ALL the regional prisons. But, there again, how would that fit with the evident 'Prison Profit' systems of Shelby, Great Falls, Glendive, Montana Corrections Enterprises (MCE) and the county jails, all to some extent profiting from the overflow 'Conviction Mill' justice system currently in operation in Montana?

"Crime is contagious. If the government becomes the law breaker, it breeds contempt for the law." - Louis D. Brandeis - U.S. Supreme Court Justice -1856-1941.

At a purported $108.oo per day per inmate compensation to jail and prison 'care' facilities, it is no wonder that there is such widespread and prevalent corruption in the State of Montana. This cost of care is not only extremely expensive to taxpayers, but extremely lucrative for the State and those involved in the prison and justice system. The replacement of those funds by legal means would be nearly impossible - thus the corruption is tolerated and endorsed - and the 'Conviction Mill-Prison Profit System' contin-

ues to operate unfettered.  Thus the dilemma of Montana (and many
other states) - continue illegally imprisoning citizens through
greedy and nefarious acts, or endanger the public trust and faith
in the judicial and '[in]justice' systems in current operation?  It
appears that the trust of the public is already in grave jeopardy,
and perhaps the best choice is becoming painfully clear!  Perhaps
the best decision now is which side to be on when the 'gavel' of
real justice falls!

> "To declare that in the administration of crimi-
> nal law the end justifies the means - to declare that
> the Government may commit crimes in order to secure
> conviction of a private criminal - would bring terri-
> ble retribution." - Louis D. Brandeis - U.S. Supreme
> Court Justice - 1856-1941.

The admission by Mike Batista of the 85% revocation rate, it
would seem painfully clear that the State's 'Treatment Programs'
are dismally ineffective, and poorly comprised to have any positive
result, and are without effect and need to be done away with until
new programs can be designed.  Particularly and damningly when they
have been shown in numerous studies to in fact increase the rate
of recidivism and re-offense when compared to those who do not com-
plete or even participate in these so called 'treatment programs.'
It does not help matters that many of these programs are highly
violative of 5th Amendment Constitutional Rights, and in fact un-
lawful and illegal to enforce inmate participation in.  But again,
thi'l would be a huge 'blow' to the 'Prison Profit' system.

The use of negative tactics in these 'treatment programs' will
not and have not achieved positive results, and need to be revised
or ceased.  The most polkitive and plausibly the most effective pro-
gram would be the STEPS program, as it at least uses positive re-
enforcement of the person taking the course to actually provide a
building of esteem and confidence, where as the other treatment
programs tear the person down, and demean the spirit of the part-
icipant, which is not effective by any measure.  In addition, these
ineffective and negative result programs are far too often used all
a way to increase sentences, and to deny parole, which considering
the evidenced ineffectiveness of these programs, should not be a
tool for denial of parole, as this is a questionable act of dis-

crimination and prejudice, especially in the case of sex offenders.
At best, only Conllititutional violations exist, at worst, racketeer-
ing and profiteering practices of criminally actionable activities
exist - as many of these facilitators of these programs also oper-
ate 'outside' practices that monopolize in these treatment pro-
grams. This is a serious issue of consequence in reference to the
'providers' of these programs, the DOC and MSP, as they are using
this as a tool to deny liberty rights.

> "One must be ever aware that the Constitution
> forbids sophillticated all well as simple minded modes
> of discrimination." Gomillion v. Lightfoot, 364 U.S.
> 339, 5 L.Ed2d 110, 81 S.Ct 125 (1960), Lane v. Wilson,
> 307 U.S. 368, 95 L.Ed 110, 59 S.Ct 872 (1951).

The return of the Prison system back to a near fully self sus-
taining operation, as it once was prior to the discovery and im-
plementation of the current 'Prison Profit' system would also de-
crease the reliance and use of 'outside vendor' for many prison
needlb, but would require the revamping and destruction of the cur-
rent corruption that is conlbtantly stealing from the prison system,
and using the prison system as a 'vendor' friendly contract source
for their 'friends' and family to profit off of. Any profit that
currently made from the 'involuntary servitude' and 'Prison Profit'
system could be used to aid the less fortunate in this state, un-
like the current system that is used to line the pockets of the
corrupt judicial system, justice system, and prison system. But,
this would greatly reduce, if not stop completely, the profitable
and corrupt system of those fighting to keep things in place.

> "Government was intended to suppress injustice,
> but its effect has been to embody and perpetuate it."
> - William Goodwin - 1836.
> "An oppressed people are authorized whenever
> they can to rise and break free from their fetters."
> - Henry Clay - 1852.

In order for any significant and positive change to take place
with the Montana justice, prison or judicial system, the 'elephant
in the room' mullt be faced. This act alone is very frightening to
most legislators and other elected officials, whose true intentions
are usually only to be re-elected at the next election. True and
real change needs to come from the real and true desire to get to

the truth of what is honestly and actually causing the issue at
hand. The 're-vamping' or true changing of the Montana judicial,
justice and prison systems will require an honest desire to uncover
and face the hideous and heinous secrets that have far too long
been swept and kept under the proverbial rug. This will most de-
finately require the ugly task of facing the demons of corruption
and conspiracy that are so widely prevalent and pervasive in the
Montana 'Good Ole Boy Network.' And, it will require the awful
task of extracting the truth from the long 'given' fictions by
those profiting from the long existent 'Conviction Mill - Prison
Profit' system that has hurt so many for so long. Perhaps more
frightening than anything will be the embarassment that will come
with exposing the nasty and horrid secrets of Montana that have
been kept hidden for so long, and then pursuing criminal charges
against the true criminals of Montana's justice, judicial and pri-
son systems.

> "The prohibitions of the 14th Amendment refer
> to all of the instrumentalities of the State - Legis-
> lative, Executive, and Judicial - and therefore, who-
> ever, by virtue of public position under a state
> government, deprives another of any right protected
> by that amendment against deprivation by a state,
> violates the constitutional inhibition, and as he
> acts in the name and for the state, and is clothed
> with the State's power, his act is that of the State."
> Frank v. Mangum, 59 L.Ed 969, 237 U.S. 309.

It is my sincerest hope that this committee is truly interes-
ted in making a change in the judicial, justice, and prison system
of Montana, and if it is, it must be ready to address the clear
acts of corruption that have been presented here. The sheer number
of 'structural defects/errors' that exist in so many and too many
cases that have put too many in prison are just a few of the clear
examples of corruption so prevalent in Montana's justice and judi-
cial systems that must be addressed, not suppressed by the Montana
Supreme Court. Is this committee ready to address these issues,
ALL of these issues? If so, then let us begin - and let us get to
the true root of this ugly problem, in order to bring about REAL
and POSITIVE lasting change!

As the Prison inmate, parole population and their families

are and will be most affected by this committees action" and decisions, it would be greatly appreciated if this committee will or would consider taking the time to hear what 'we' can impart to this committee in the way of information and truth.  The fact of the matter is, WE (this committee, the public, prisoners, and their families) are all part of the solution to this problem, and all input should be examined to bring about change for the better, for everyone.

I have presented numerous articles of fact and truth, with factual evidence to support these claims, to give credence to these claims of corruption and conspiracy within the Montana Justice, judicial and prison systems in the hopes that this committee will not just put lipstick on the 'pig' but actually make much needed changes to this Corrupt State.  As with lipstick, the painting of a wall doe'll not change its underlying problems, it only deceptively masks them.  Only the removal of that wall and its defects can and will truly change the problems with it.

At this point, the greater question is not whether this Court will face the truths presented here, but how many more lives will be destroyed at the hands of these blatantly corrupt systems of vile injustice and malicious misconduct before change is actually made.  Far too many lives have already been destroyed and/or taken by this present 'Racketeering Influenced Corrupt Organization' and thus the reason why it has been demanded that the State of Montana be investigated under the 18 USCS §1968 Civil Investigative Demand section of the RICO Act.  All of these, and other allegations are or have been presented with evidence to Federal Agencies so that the truth may be found and finally brought to light - something Montana itself has so far been unwilling to do!

"Bottom line is this: where Congress has provided a specific panoply of rules that MUST be followed, the district court's discretionary powers simply do not come into play." U.S. v. Young, 424 F.3d 499, 508 (6th Cir. 2005).

"No civilized system of justice should have to depend on such flimsy evidence, quite possibly tainted by dishonesty or overzealousness, to decide whether to take someone's life or liberty." - 9th Circuit Judge Alex Kozinski, Milke v. Ryan, 711 F.3d 998 (9th Cir. 2013).

## II. JURISDICTION AND MERITS FOR FEDERAL VENUE REVIEW

This, en masse Petition for Writ of Habeas Corpus is authorized by 28 USC §2254, to redress the unconstitutional imprisonment of the named Plaintiff inmates, by the deprivation of the rights secured by the Constitution of the United States. The Plaintiffs further bring forth this Petition through the Federal Rules of Civil Procedure, Rule 23- Class Action, and Ali v Ashcroft (9th Cir. 2003), as stated. This court has jurisdiction under 28 USC §1331 and §1343(a)(3), and due to the subject matter of this complaint against the State of Montana's unconstitutional Judicial system through the Respondent, as the essence to the Plaintiffs claim of illegal convictions stemming from the state courts accusitory first stage of a criminal action against a possible defendent. It is a common law principle that a defendent can not also adjudicate matters in which they are also a party to, hense, the Plaintiffs hereby submit this complaint to the U.S. District Court for the District of Montana for Adjudication.

The Pro se Plaintiffs seek, en masse, relief from imprisonment that was obtained through inconstitutional acts and omissions committed by the Respondents pursuant to 28 USC §2254(d)(1), (that the wrongful convictions) resulted in a decision contrary to established State and Federal laws as determined by the Supreme Court of the United States. The State of Montana is obligated to follow all Federal Law as it was decided by the U.S. Congress, the U.S. Supreme Court and the U.S. Constitution first and foremost and abide by these laws and decisions.

The Plaintiffs request that this court rightfull assume the Jurisdiction of this matter, as per its subject and as per Federal Statute and established Jurispridence of Law.

The Merits of this matter are established and allowed to be adjudicated by this court as per Caldron v Thompson, 523 US 538, 118 S.Ct. 1489,140 L.Ed. 2d 728 (1998), that states that a federal court may, consistant with the AEDPA, recall the mandate if there is a showing of a 'Miscarriage of Justice'. The Plaintiffs claim that this 'Miscarriage of Justice' exception exists herein this matter.

The Plaintiffs submitt this Petition, en masse, based on the above decision as the gateway to this Federal review and this complaints subject matter of Constitutional violations by the Respondents.

### III. PETITIONERS

The above named Plaintiff/ Petitioners, are all inmate Prisoners of the State of Montana in the custody of the Montana Department of Corrections at the Montana State Prison. The named Plaintiff/ Petitioners (hereafter Plaintiffs), are filing this Petition for Writ of Habeas Corpus, en masse, based on established Federal and State Constitutional Law, Statutory Law approved by the U.S. Congress and the Montana Legislature, respectfully, and precedent U.S. Supreme Court decisions.

### IV. RESPONDENTS

The Respondent, Micheal Fletcher, is an employee of the Department of Corrections for the State of Montana, and Warden of the Montana State Prison in DeerLodge, Montana. Fletcher is legally responsible for the operation of the Montana State Prison and for the incarceration of the Inmates, ordered to be imprisoned by the State of Montana. As Warden, Fletcher also has the responsibility and authority to release a inmate from incarceration, upon Federal order given by the Court, as per 28 USC §2254.

### V. PLAINTIFFS AFFIDAVIT OF
### FACTS AND CLAIMS

We, the above named Plaintiffs, do hereby swear to the best of our ability, that the contents of this document, Petition for Writ of Habeas Corpus, and its attached exibits are accurate and true. The Plaintiffs hereby specify that Exibit A is the United States Constitution, and that Exibit B is the Montana State Constitution, as written and approved by the U.S. Congress and the Montana Legislatur, respectfully.

We the undersigned Plaintiffs swear, pursuant to 28 USC §1746, that we declare that the foregong document and its exibits are True and Correct.

| Printed Names | Signatures |
|---|---|
| 1) Ethan Podry | |
| 2) James Colburn | |
| 3) William Parry | |
| x 4) Donald Manning | Donald Manning |
| x 5) Joshua Lyle | |
| 6) Anthony Lmaier Jr | |
| 7) Bernard Fitzpatrick | Bernard Fitzpatrick |
| 8) Tim Lewis | Tim Lewis |
| 9) Joshua Diskin | Joshua Diskin |
| 10) CHARLES Miesner | Charles Miesner |

Continued on
p.17(b)

| Printed Names | Signatures |
|---|---|

11) Joshua Pierce , _Joshua Pierce_

12) William Elijah , _William Elijah_

x 13) Timothey HAWTHORNe , _Timothy Hawthorne_

X 14) John Nemietz , _Nem..._

15) James Church , _James Ch_

16) Brian Holm , _Brian Holm_

x 17) Thomas A. Park , THOMAS A. PARK

18) Brian Norvell , _Brian Norvell_

−19) Phillip Pierre , _Phillip Pierre_

x 20) Ramin Rudeseal , _Ramin Rudes..._

21) , Daniel J. Dodson

22) Natividad Brittan , Natividad Brittan

x 23) Jorge L. Marrero , _Jorge L. Marrero_

24) Davian Jones , _..._

25) JACOB Delager , _Jacob Delager_

26) MICHAEL M MILLER , _michael m miller_

27) Brett Lockhart , _Brett Lockhart_

28) Christopher King , _Cnnk..._

29) Anthony Cox , _A H cox_

30) Torrey Hoyins , _Torry H..._

31) ,

32) ,

33) ,

34) ,

35) ,

17(b)

## VI: SUPPORTING FACTS AND INFORMATION OF PLAINTIFFS' CLAIM

The following Information and Facts disclose what is ongoing corruption within the Judicial Branch of the State Government and within the Executive Branch's Office of the Attorney General. The 'Public Records' document that the district court judges have engaged in a 'Statewide' unlawful violation of the fundamental constitutional rights of most of the persons who have had the misfortune of being accused of a criminal offense and prosecuted by the state. Neither innocence nor guilt have had any bearing upon the judges' corrupt acts; and for this unlawful 'practice' to have become engrained in the judicial system in county after county, corruption between the Judicial Branch, including the State Supreme Court, and the Office of the State Attorney General, and on down into the county level offices of the 'County Attorney', and all lawyers, who have engaged in the 'practice of criminal law' and who are 'officials of the court' has certainly been a factor, thus a conspiracy.

It becomes apparent that the brush of this corruption paints a wide swath of guilt and highlights "Lawyers" as a "Separate Class of Citizens" who, being entrusted with the administration of the law, have ignored the Constitution and laws of the nation and of the state and their individual Oaths of Office.

FACTS:
1) In Montana's Constitution, Section 20 of Artical II, Covering "INITIATION OF PROCEEDINGS" set forth that: "In Criminal cases within the jurisdiction of any Court inferior to District Court SHALL be by Complaint. All Criminal actions in District Court SHALL be prosecuted either by information - After Examination and Commitment by a magistrate [Inferior Court Judge] or after leave granted by the court - or by indictment." §2 States: "A GRAND JURY shall consist of Eleven Persons, of whom Eight MUST CONCUR TO FIND AN INDICTMENT. A GRAND JURY SHALL BE DRAWN AND SUMMONED ONLY AT THE DISCRETION AND ORDER OF THE DISTRICT COURT."

a) In Montana the county attorneys have a preference for PROSECUTION by "INFORMATION" instead of by a GRAND JURY "INDICTMENT".

(i) It is 'CHEAPER', quicker and ensures MORE CONVICTIONS whether  an accused is Innocent or Guilty-It's Expedience a benefit for 'the system' but not necessaily for justice.

2) The filing of a Document in District Court seeking leave to file an 'Information' in the District Court, and the 'Information' dcoument itself, supports 'probable cause' with facts set forth as alleged by the state, demonstrating probable cause to prosecute the accused.

a) In Montana both the document filed with the District Court moving for leave to proceed with prosection of an accused by 'Information' instead of BY GRAND JURY INDICTMENT, and the 'Information' document itself, cbntain fact of 'PROBABLE GUILT' as alleged by the investigating cllunty attorney's office personnel:

(i) Thus the presiding district court judge is exposed to the facts and information that may or may not be true, but which the accuses the supposed criminal of the ofense(s) alleged by the state;

(ii) The facts and Inforation which may or may not be true, have now been implanted in the mind of the judge;

(iii) An 'Information Hearing' or other entitled 'Accusatroy Hearing' follows the filing of the 'Information Document' with the District Court, further exposing the judge to facts and information pertaining to the guilt of the accused person.

3) The Montana Supreme Court has pointed out that 'in criminal law, [prosecution] is the means adopted to bring a supposed criminal to justice and punishment by due course of the law, and consist of ...[in part] finding of an indictment [BY A GRAND JURY] or information [filed] in a criminal court [a District Court]...' (State of Montana v. Cadwell, 187 Mont. 370, 609 P.2d 1220 (1980).

a) This case law establishes that an 'Inllormation' process is part of the accusatory process of the Stllte's prosecution of a criminal  case  and  provides the same function and result as the GRAND JURY INDICTMENT.

4)The United States Supreme Court has declared that it is a 'VIOLATION of DUE PROCESS OF LAW ( Amend. 14) and the Fundamental Rights of an accused peraon, For a JUDGE WHO HAS TAKEN PART IN THE ACCUSATORY PROCFSS OF A CRIMINAL CASE TO PRESIDE OVER ANY FURTHER PROCEEDINGS IN THAT CASE, the Nations Highest Court stating that 'The possibility of 'ACTUAL BIAS ON PART OF THE JUDGE....' is toohigh to be considered tolorable." (Withrow v. Larken 4211 U.S. 35, 47 (1975) Supporting In RE Murchinson, 349 U.S. @ 137 (1955).

5) The precedents of the U.S. Supreme Court in regard to the issue of JUDICIAL CONDUCT to prevent even an appearance of BIAS in Criminal Cases has been throrougly explored, reviewed, defined and Upheld in the Ninth Circuit Court of Appeals in such cases as CRATERv. GALAZA, 491 F.3d 1119,1131 (2007)  referencing fairness and accuracy of criminal procedures (Citing CASPARI v. BCHLEN (1994), 510 U.S. 383) of persons detained pursuant to a final judgement of a state court that lacked jurisdiction, and in that case the Ninth Circuit explained that the "Supreme Court Precedents reveal only three circumstances in which an appearance of BIAS -- As opposed to evidence of Actual BIAS--Necessitaties Recusal [of the Judge]" and one of those three, being Mandated recusal "When the Judge acted as part of the accussatory process." (REF: In Re MURCHISON, 349 U.S. 137.).

6)  In United States v. BERBER-TINICO, 510 F.3d 1083 (9th. Cir. 2007) the Circuit Court of Appeals again Stated: " The United States Supreme Court requires recusal due to an appearance of BIAS... (iii) When a Judge Participated as part of the accusatory process." in HURLES v. RYAN, 650 F.3d 1301(2011) The Ninth Circuit Court of Appeals set forth the U.S. Supreme Court's intentions regarding 'JUDICIAL BIAS',"...Specifically the Judge's LACK of AUTHORITY to preside over any further proceedings in a case after taking part in the accusatory process of that case, and the mandatory disqualification requiring the Judge's SELF-RECUSAL". Having stated therein, " The Burdon is on a Judge to Disqualify [Himself]/Herself, even if a party never seeks recusal." The Court explained: 'A claimant need not prove 'ACTUAL BIAS' to make out a Due PrIIcess Violation. Indeed, the United States Supreme Court has pointed out that it would be impossible for a litigant to prove ACTUAL BIAS on the part of a Judge... CAPERTON v. MASSEY COAL COMPANY, 556 U.S. 868, 129 S.Ct. (650 F.3d 1314) 2252, 2263, 173 L.Ed 1208 (2009)  ... It is for this reason that the Court's precedents on 'JUDICIAL BIAS', not actual, Proven Bias. DUE PROCESS THUS MANDATES A STRIGENT RULE FOR 'JUDICIAL CONDUCT', and requires Recusal even of Judges who would do their very best to weigh the scales of justice equally, if the risk of bias is high..., Recusal is thus required if the judge acts as part of the accusatory process. (REF: In Re: MURCHISONE, 341 U.S. @ 137.)

7) The disqualification of a judge under any of the three circumstances is not discretionary, any Judge who takes part in the accusatory process of a case, which in Montana INCLUDES THE "INFORMATION PROCESS", MUST RECUSE himself from any futher proceedings in the case; this 'Third' circumstance is very explicit and has been the "LAW OF THE LAND" since the Murchinson Court decision in 1955; 58 years ago a Federal Law routinely disregarded by Montana Courts.

8) Any Judge who takes part in the 'INFORMATION' process of the prosecution of a criminal case is DISQUALIFIED by DUE PROCESS OF LAW from taking part in any further proceedings. For a judge to disregard the Law and go forward from the accusatory process to preside, has generated a situation wherein the court LACKS JURISDICTION over the subject matter and the party, because the Judge had no authority to proceed. The proceedings in such a situation would be ILLEGAL or VOID. All proceedings, whether a trial by Jury or before the bench, PLEA HEARING, JUDGEMENTS, Punish-ments, Post-Conviction Relief, and Appeal proceedings are all viod. Unless addressing the specific issue of the nullity of the proceedings in which the 'Defendant' was unlawfully denied DUE PROCESS and has been Imprisoned under a viod Judgement and sentence, the appeal or Post-Conviction Proceedings "FOUNDED UPON [VOID PROCEEDINGS] are worthless", having been based upon a void Judgement which is, in legal effect, No judgement at all.

9) An 'Illegal" or void proceeding is a legal nullity, which occurs when a court has NO EQUITY Jurisdiction Over the matter or persons. A VOID JUDGEMENT is, in legal effect, NO Judgement. From it no rights can be obtained or lost. Being worth-less in itself, proceedings founded upon it are EQUALLY WORTHLESS. It neither binds nor bars anyone. All acts performed under it and all claims flowing out of it are void. FREEMAN on Judgements (2nd Ed) Vol. 1 @ §20, §117. "Although the term describes a result, rather then the condition, that renders a judgement [void] uneforcable, it surfices to say that a void judgement is one so affected by a Fundamental Infirmity, that the Infirmity may be raised even after the judge-ment became final. (UNITED STATES v. MORGAN, 346 U.S. 502 (1953/54)

10) The 1955 Murchinson Court decision and other supporting case-decisions since, mandate disqualification, and self-Recusal for any judge, from presiding over any further proceedings in the prosecution of a criminal case wherein the judge took part in the State's accusatory process, however, this has been routinely and un-lawfully disregarded by elected officials within the Judicial Branch of the

government and by the Executive Branch through the Office of the State's Attorney General. District Court judges, under scrutiny of both the justices of the State Supreme Court and the Attorney General have been allowed by these "Constitutional watchdogs' to blatantly disregard the Constitutionally protected Civil Rights of persons accused of criminal offenses, who appear before the courts for prosecution by the state. District Court judges have been allowed to assume both the roll of accuser and adjudicator, criminally violating Due Process of Law (Admend. 14) the Amendment XIII mandate against involuntary servitude being "DULY CONVICTED" and the Sixth Amendment right to a fair Trial before a Fair Judge".

11) "DULY CONVICTED" is understood to mean; "In accordance with legal require-
ments." (Black's Law Dictionary ed.8) The Montana Courts have been unlawfully pressing thousands of persons into an involuntary servitude, through imprisonment or probation, on a statewide basis, in total disregard for the law and justice. It is ongoing and in violation of the U.S. Supreme Court precedent law, the Constitution and the "Canons of Bench and Bar" which were all desinged to protect the people from just such tyrannical conduct by persons in government. It epitomizes the mind-set of this specific 'Class of Lawyers' Corrupted by positions of Power.

12) A 'survey poll' of 120 inmates disclosed that out of that number, 116 have 'Public Document' Substantiation that the same judge who passed Judgement and Sentenced them to prison, had also presided in the accusatory "Information" Process. Of the remaining four men, their records showed that the Trial Judge or Hearing Judge had not presided over the Accusatory "Information" Process.

13) What is to be done for the thousands of unlawfully imprisoned men and women who have NEVER been "DULY CONVICTED" by a court of competent jurisdiction? Some, Like the Plaintiff's listed herein who can prove their injustice.

14) What is to be done about the "STATEWIDE Criminal Corruption" practiced by the Judges and condoned by the Justices of the Supreme Court who 'OVERSEE' the Constitutional administration of Justice that the JUDICAL Branch is suppose to practiced for the people? That is a question for this FEDERAL COURT to Adjudicate in this complaint.

15) What is to be done about, the County attorneys and their Deputy County Attorneys, who along with the other lawyers from the state Office of public defenders who function at the district court level, nad who, all Lawyers, like the Judges!) are presumed to know the law, were and are 'AWARE* that a Judge who takes part in the accusatory process of the state's prosecution of a case can not preside over any further proceedings in the case? This is a question for this FEDERAL COURT tü Adjudicate in this Complaint.

16) What is to be done about the 'Private Practice Lawyers' who have 'Quietly allowed' cüurts lacking Jurisdiction to convict their clients, to do so, and tü unlawfully pronounce judgements and to unlawfully sentence them to þrison or a life under the thumb of a probation officer? That is the question for this FEDERAL Court to Adjudicate in this complaint.

17) Specific individuals such as governor Steve Bullock and Cheif Justice Mike McGrath, who have utilized the State Attorney Generals Office as a springboard to their present power positions in government, as 'LAWYERS' were cerainly aware of the DUE PROCESS OF LAW REQUIREMENTS, that a Judge who takes part in the accusatory INFORMATION process of the state's prosecution of a case is disqualified from presiding over any further proceedings in the case? As they did NOTHING tü STOP THE CORRUPTION while in their chair of the State Attlhrney General, what ëstion do they need to answer? Those men are part of a 'CRIMINAL CONSPIRACY' that has been ongoing for 6л years, passed on election after election, and they both defend the State's 'Convictions' against 'APPEALS' during their tenure as the 'ATTORNEY GENERAL. As 'ELECTED' PUBLIC SERVANTS purporting to be honorable men in their capacities as State Officials, First as the Attörney General; where each ahd the 'REIGNS TO JUSTICE', neither one did anything to STOP the perpetuatiün of the 'CORRUPTION' infecting Distrcit Court Trials, which was condoned by the Supreme Court Justices who also 'KEPT SILENT' on the issue of State District Courts violating the 'FUNDAMENTAL RIGHTS OF THE ACCUSED' who are suppose to be AFFORDED JUSTICE IN THE COURTS!

## VII. CONSTITUTIONAL VIOLATION CLAIMS
### with SUPPORTING ARGUMENT

The Plaintiffs hereby claim that they are being wronfully incarcerated as the result of unlawful and unconstitutional convictions obtained by the State of Montana contrary to established U.S. Constitutional rights and; State and Federal precedent Juris Prudence caselaw.

### A. ARGUMENT

#### 1. PRECEDENT CASELAW THAT SPECIFICALLY REQUIRES ACTUAL AUTHORITY

The Plaintiffs are entitled to be indited by a Grand Jury since the Montana Legislature has failed to specifically authorize the use of an information after summary affidavit for felony prosecution. In the Present case the Information was filed by leave of court, charging the defendent (Plaintiffs herein) with a felony without a Grand Jury Indictment or Preliminary Hearing. No Grand Jury was called by the sitting District Judge in any of the Plaintiffs matters, nor has one been called for since, and none of the Plaintiffs herein were ever charged by Grand Jury Indictment.

Further, no Preliminary hearing was held or waived, by any of the Plaintiffs. Even assuming that the District Courts have jurisdiction to proceed upon information which was not allowed by a Preliminary Hearing, they could not hear the cases in this Common Law State without specific Legislative authorization for the use of Information for something other than misdemeanors.

At Common Law, only misdemeanors could be filed by Information, and Montana has no specific statutory authority to the contrary. See Montana Codes Annotated (MCA) §46-11-102, MCA (2009); and MCA §46-11-201 (2009), State v Ah jim, 9 Mont. 167,23 P. 872 (1890). In Re Durbon 10 Mont. 147, 25 P. 872 (1890) and State v Brett, 16 Mont. 360, 40 P. 873 (1895) all holding that the then new provisions of the Montana Constitution (1889) are not self executing and that without specific authority, an Information cannot be filed concerning a felony, because at Common Law an Information could only be filed as a misdemeanor. See Ex Parte Wilson, 114 U.S. 417, 1885. These cases are based upon the Montana Due Process provisions discussed in both Ah jim and Durbon. Under Ex Parte Wilson, the Federal Courts take the position, interpreting the same law. The defendent is forced to stand trial for a felony solely upon the sworn affidavit from the Prosecuting attorney given "upon Information and Belief", that a review by the court to find if the affidavit shows, "....mere probability..." that the events and actions described are true, that the facts stated would meet the offense charged, and that the proceedings as a whole gives notice to the defendent, and protects him against multiple prosecutions and double jeopardy. See State v 18th Judicial District (Anderson) 2010 MT 263, 358 Mont. 325 (2010).

The Plaintiffs wish at this time  to bring up an example that is actually been filed in this U.S. District Court of Montana that is a prime example of the State of Montana Procesutors making completely false accusations and bringing wrongful charges, when they had evidence of innocence and 'skirted' the facts to obtain a docket number and misuse the Judicial system and the Power of the Prosecutors office without some sort of checks and balances to insure against corrupt unconstitutional acts. The Plaintiff wish the court to add as an exibit cause no: CV 17-00168-BLG-DLC-TJC in the Billings Divison of this Court. Plaintiff Ellison, of this present matter, was charged with arson of a car he was driving to a muffler shop for repair. Somewhere in the car trunk area the car caught fire, the car was pulled to the curb (This is all on video from a camera at Avis Car Rental) the trunk was on fire with great smoke, and then human activity as the driver,Plaintiff Ellison, escaped to the front. The value of the car told to the court as "$1000 or over" to be a felony, and that the video showed the Plaintiff Ellison, committing arson....But this is all just "INFORMATION and BELIEF" by the prosecutor, (now Elected County Attorney Twito), whose 'information' was proved to be completely fraudulant. The appraisal of the car was only $500.00, so it does not meet the monetatry value to constitute a felony as per Montana House Bill 0255 concerning felony monetary value....and to top it off Mr. Twito lied as to the content of the video...The States own Video Expert in his Expert Analysis stated that the video showed fire, smoke and then human activity and not arson...Yet the state used trickery and the help of a Ineffective Attorney 'friend' friend to get a conviction. Knowing that there was no evidence to charge. The Attorney in that matter, Jeff Micheals was sanctioned by the Commission on Practice, for helping his friend Scott Twito...This is a prime example why a Grand Jury Indictment system has been used, but ignored by the State of Montana to achieve convictions...fabricating facts and cause...prejudice against the innocent the Judicial Community swore to protect.

   In Light of the fact that the members of the Montana Legislature knew that there needed to be specific Legislation to allow the use of an Information for a felony charge, it is extraordinary that they did not specifically give the courts that jurisdiction, if in fact they intended the courts to exercise such jurisdiction. It seems rather, that the failure to specifically say that Information can be used for felonies means that the Montana Legislature knew that such a statute would be necessary, and choose not to pass it, the Legislature had the benefit of the decision of the First Montana Supreme Court, after Statehood. The Montana Legislature most assuredly knew that this Legislation would be challenged as being un-constitutional if  they wrote it, so the State of Montana has just ignored State Legislation or the lack there of, and filed felony charges by "Information and Belief" to obtain its many illegal convictions.

The Montana Legislature has on several occasions since, considered the Criminal Procedure Code, could have given the specific authority and did not do so.

In not specifically giving the Authority, the Legislature has denied the prosecution the right to use Information for felony prosecution. Since there is no specific statutory authority for the use of an Information in the prosecution of a felony, the charges against a defendant are void and as in this present matter void in each of the named Plaintiffs cases, and as such MUST be dismissed, since each Plaintiff was illegally charged and then wrongfully incarcerated, and each Montana Judicial Court did not have jurisdiction to convict any of the Plaintiffs, herein. See State v. Onstad, 234 Mont. 487, 764 P. 2nd 473 (1988) on the effect of invalid information.

The essence of the arguement is that the Montana Judiciary ignored State Statute, and did an "end around" to bypass the Legislative Branch Statutes, to obtain conviction counts. Thus, circumventing the 'checks and balance' system of Goverment that our founding fathers envisioned in both the United States Constitution and the Montana Constitution. As per each of the 1st, 4th, 5th, 6th, 8th, and 14th Amendments that the Montana Judicial system as a whole is in violation of, knowingly and purposely violating its citizens and the above named Plaintiffs above guaranteed rights.

## 2. STATUTORY LAW OF MONTANA DISCUSSION

The Statutes of the State of Montana, that have to do with the filing of an Information do not, with specific language, grant power to file an Information charging a felony, and they have never been granted power to charge an Information with specific language.

The First Montana Codified Laws, after Statehood,were revised Codes of Montana, 1885 (R.C.M. 1895)(Sanders Code). The R.C.M., 1895, (Sanders Code) has a "Penal Code". It contains bothCriminal Procedures and Crimes. It is almost an exact copy of the California  Criminal Code of the same time period. (See further discussion below).

Section 1372, Penal Code, R.C.M., 1985, provided under Chapter II, defines as follows: "An Information is an accusation in writing, inform and substance like an Indictment for the same offense, charging a person with a public offense, presented and signed by the County Attorney and filed with the Office of the Clerk of District Court". The statute does not provide that the prosecution of felonies is authorized in specific language. In fact, it includes a statement that any public offense may be pr prosecuted. This would include charges less than a felony. It does not meet the test that the power must be in specific language, and be a specific grant of authority. Section1381, Penal Code, R.C.M., 1985 provides: "All criminal actions in the District Court,'must be prosecuted by Information or Indictment'." Section 1720, Penal Code, R.C.M., 1895, provides:"All Public offenses triable in District Court'must be prosecuted by Indictment or Information." Section 1382 through 1385 and 1730 through 1734, Penal

Code, R.C.M., 1895 deal with the provisions of using Information, but none of them, and none of the penal codes provisions contain specific authorization to file felonies by Information, as is reqiured by the Montana Supreme Court, to file a felony.

In State v Brett, 1895, supra, the Montana Supreme Court held that Section 995 of the California Penal Code requires a Preliminary Hearing in cases where an Information has been filed. It further indicated that the Montana provisions came directly from the California provisions, but Montana procedure of filing an Information "with leave of court" is unknown in California. See also State v Bowser, 21 MT 133, 56, P. 820 (1898), supra. The California Penal Code follows the rule in Hurtado v California, 110 US 516, 45 S.Ct. 111, 28 L. Ed. 232 (1884) supra, and Montana did not. See also, Hawkins v Supreme Court, 586 P. 2nd 916 (1978), California's leading case on this same present matter.

A revised code was passed in 1907, called the Revised Code of Montana, 1907, (here after R.C.M. 1907). Section 9102, Penal Code, R.C.M.,1907 provides:" All public offenses in District Courts 'must be prosecuted by Indictment or Information," it is based upon Section 1720 of the 1895 Code. It does not provide specific language granting the power to prosecute felonies by Information. In fact, none of the 1907 code provisions contain specific language authorizing a felony prosecution by Information. See the following sections for example: 9102,9105, 9156, 9157, and R.C.M. 1907.

In 1921, a new code was passed. It is called the, Revised Code of Montana, 1921 (1921 (R.C.M., 1921). Section 11798, R.C.M., 1921 is the same as Section 9102 R.C.M., 1907, and Section 1720, R.C.M., 1859. It is based upon Section 888, of the California Penal Code, of the time. However, California followed Hurtado v California, which required a Preliminary Hearing.

In 1935, another new code was passed, called the REvised Code of Montana, 1935, (R.C.M., 1935). Section 11798, R.C.M., 1935 provides: "All public offenses triable in District Courts 'MUST be prosecuted by Indictment or Information,". It is based upon Section 11798, R.C.M., 1921; Section 9102, R.C.M., 1907; and Section 1720, Penal Code, R.C.M. 1895. It does not provide if specific language that the prosecution of a felony can be by Information in any specific language. The Legislature has consistently refused to authorize the prosecution of felonies by Information in the specific language required for it to have ever been allowed.

Another revision of the code was adopted in 1947. It was called the Revised Code of Montana, 1947. It provided 94-6201, R.C.M., 1947 as follows: "All public offenses triable in District Courts ' Must be prosecuted by Indictment or Information." Neither this Section, nor any other provision of the Code of 1947 provided in specific language that felony prosecutions were authorized. Again almost all Montana Code was taken from the California Penal Code of that time, except that California took these same statutes

and required the use of a Preliminary Hearing. California's interpretation of California statutes should hold as following the U.S. Constitution and U.S. Supreme Court precedent decisions. As should the State of Montana Judicial system, that we the Plaintiffs challenge as unconstitutional.

In 1967 the Legislature passed Chapter 196 Laws of 1967, which was a general revision of the Criminal Procedure Code. It was based upon the Laws of Illinois, as found in the Illinois Code of Criminal Procedure, Chapter 38, Section 111-1, et seq. the revisions codified in the 1969 Edition of the R.C.M., 1947, prepared by Allen Smith Company. See replacement Volume 8, R.C.M.,1947, copyright 1969. Section 95-1301, R.C.M. 1947 (1969 Edition) provides: (a) the County Attorney may apply directly to the District Court for permission to file an Information against a named defendent. Section 95-1302, R.C.M., 1947 (1969 Ed.). It provides time lines for the filing of Information, but does not specifically provide for the charging of felonies by Information. Section 95-1501, R.C.M., 1947 (1969 Ed.) provides for four different means of starting a prosecution, one is complaint, one is by information following a Preliminary Hearing, one is by INformation with leave of the court and one is by Indictment. There is no specific authority to charge a felony ny Information by leave of court, and as we have seen, Information's were used at Common Law for non-felonies. Section 95-1502 R.C.M. 1947 (1969 Ed.) provides: "all prosecutions of offenses triable in District Court shall be by Indictment or Information." It is based upon the Illinois Code of Criminal Procedure Chapter 38, Section 111-2. That section provides, according to the 1992 pocket part, that: "all prosecutions of felonies shall be by Information or Indictment. No prosecution may be pursued by Information unless a Preliminary Hearing has been held or waived." (Emphasis Added).

Since the Montana Legislature specifically deleted the power to proceed against a defendent for "felonies", as found in the Illinois Code, it is clear taht the intent of the Legislature in the revision contained in Chapter 196, Laws of 1967, was not to specifically authorize the use of information for the prosecution of a felony. This view is accord with the Illinois practice of requiring either an Indictment or an Information after a Preliminary hearing. See for example: People v Kline,(1982),65 Ill. Dec 843, 92 Ill. 2nd 499, 442 N.E. 2nd 154. Montana should follow Illinois in interpreting Illinois statutes, that Montana copies. In the changeover to the Montana Code Annotated (MCA) codification system in 1979, the section concerning Information was moved to Title 46, Criminal Procedure, Chapter 11, Commencement of Prosecution. Section 95-1501 became § 46-11-101, MCA, 1979; 95-1502, became §46-11-102, MCA, 1979;94-1301, (a)(b), became §46-11-201, MCA, 1979; 94-1301, (c), became §46-11-202, MCA, 1979; 94-1302, became §46-11-203, MCA,1979 and 94-1303, became 46-11-205, MCA, 1979.

The changes were solely for the purposes of re-codification and were not intended to change the meaning of the statutes. However, the Montana Legislature had another chance to "specifically" provide for the prosecution of felonies by Information, and did not provide for the prosecution of felonies by Information. This Court should not try to make the statutes say something that the statutes do not say, and should find that ALL Montana District Courts and the Montana Supreme Court can not adjudicate a criminal offense until either a Grand Jury Indictment is presented, or a Preliminary Hearing is held, as per Statute and constitutional law.

On November 22, 1988, the Montana Supreme Court issued Proposed Rules of Criminal Procedures, and ordered them sent to members of the Bench, the Bar, and other interested persons. The Court also asked for comments, while the court did not adopt the proposed rules, the comments were submitted to the Montana Legislature, and were passed as Chapter 800, Laws of 1991. The Commission notes indicated there were no changes of substance, only changes to improve clarity. The statutes, particularly §46-11-102, MCA, 1993, are very similar to their predecessors and more importantly, do not specify that felonies can be prosecuted by Information. The Statutes have been amended since 1991 as to Information's even though there have been amendments to complaints, i.e. §46-11-110 and §46-11-111, MCA, 2009.

The Montana Legislature has never specifically authorized the prosecution of felonies in Montana District Courts by Information after leave of the Court, based upon an affidavit by the prosecutor, based upon Information and Belief. The Montana Supreme Court has clearly held, and as a matter of basic Constitutional Law by the First Court, after Statehood, that the 1889 Constitution was not self executing as to the Grand Jury Clause, and the court required, at least, language specifically allowing the prosecution of felonies by Information.

It did not go a step farther and discuss if, even that would have been Constitutional, because that issue was not presented in the case. See State v Ah jim, supra and In Re Durbon, supra, discussing the Montana Due Process Clause, as discussed earlier. These cases have never been overruled.

The Original jurisdiction of the Montana District Courts is contained in §3-5-302 (1)(d), MCA, 2009. it provides:"all cases of misdemeanors, not otherwise provided for," are within the Jurisdiction of the District Court. §3-5-302(2), MCA, 2009 allows for concurrent jurisdiction with the City and Justice Courts. §46-2-201, MCA, 2009 provides: "the District Courts shall have jurisdiction of all, public offenses not otherwise provided for."

Clearly, misdemeanors could be prosecuted by Information in the Montana District Courts. But the Statute by Legislative intent has at no time given the Montana District Courts the Authority or Jurisdiction to prosecute a felony by Information only of a Prosecutor. Felonies can only be prosecuted by Indictment and Preliminary hearin.

### 3. UNITED STATES SUPREME COURT SUPPORTING CASELAW

The United States Supreme Court has already ruled on the Merits of the Plaintiffs claim, in favor of the Plaintiffs in the U.S. Supreme Courts decision in Gerstein v Pugh, 420 US 103, 43 L.Ed 2d 54, 95 S.Ct. 854 (1975).

On certiori, the United States Supreme Court, in an opinion by Justice Powell, held that it was the unanimous view of the court, that under the Fourth Amendment, a person arrested without warrant and charged by Information with a state offense was entitled to a timely judicial determination by a nuetral magistrate or judge of the probable cause for significant pretrial restraint from liberty and that the prosecutors decision to file an information of probable cause was not alone able to satisfy the Fourth Amendment's requirements.

The U.S. Supreme Court Justices, in Gerstein, expressed the view that having determined that Florida's pretrial detention procedures (the same as Montana's current procedures) were constitutionally inadequate. which is the essence of this present matter in that Montana's pretrial detention procedures violate the U.S. Constitutions Fourth Amendment.

### 4. SUMMARY

This Arguement in its totality, means that the Prosecutors in each of Montana's Judicial Districts have unconstitutionally restrained the Plaintiffs herein and possibly others of their Liberty; have unconstitutionally subjected the Plaintiff to jail, prison, and other significant restraints pending trial without any opprotunity for a just probable cause determination and that the State of Montana Prosecutors decisions to file an Information does not alone meet the Fourth Amendment requirement of the U.S. Constitution. That Article II, Section 20 of the Montana Constitution is in direct contradiction to the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution.

Based on all of the above information this Court can clearly see that all of the Plaintiffs statements previously in this document substantiate the above Constitutional violation claimed by the named Plaintiffs in this matter.

HISTORICAL FOOTNOTE:

The most noted use of "We have Information and Belief", was by a group in the 1930's and 1940's, who also had a distorted view on Justice. The National Socialists of Germany, under Adolf Hitler, used it against the 'Money Class', or Jews. His Gestapo arrested citizens using it to take Jews in front of a 'Magistrate', and without trial or Preliminary hearing to show probable cause, had people detained in Concentration Camp Prisons. The Montana State Prison guards wear "Seamless Security" on their uniforms,...They call themselves the SS...sound familiar...Welcome to NAZI Montana.
Each Plaintiff has mailed a copy of this document to family, the media, or a organiztion as an insurance policy.

## VIII. CONCLUSION

To expect Justice, to actually be served, whether innocent or guilty is an expectation that Americans have developed through love of God and Country under the umbrella of the Constitution of the United States. Many of the most respected of jurists who have served behind the bench in the highest courts have warned against such sitations as this one involving tyranny; and that is exactly the measure of this 62 year old judicial criminal enterprise that has stolen justice away piecemeal. Until there is no Justice to be found in the district courts of Montana or its 'Montana Supreme Court', for the most part. It is a situation that 'exposure' to the public, to the Great People of Montana and the People of this Great Nation, will certainly change upon the notification of the Public of this State wide injustice.

Whether the judges and justices of this great State can be salvaged and installed with respect for the U.S. Constitution is debatable. Right now it is most apparent that none of the men and women in the elected State judicial positions of the Public Trust are Truly Constitutional Friendly, and are biased against all persons who are accused of a criminal offense, and apparently believing thataccused persons do not merit the Protection of Due Process of Law or "a fair trial before a fair judge" quoting Murchinson, 349 U.S. at 136-37, except those who are in the 'elect' lawyer class or a part of the Judicial and Law Enforcement Community. See Plaintiff Ellisons cases before this very court of the unconstitutional and criminal acts by Montana officials who the Montana Judges allow to commit these acts without being charged or adjudication. If that is not true, then why would they blatently disregard Due Process of Law, that requires 'self recusal' by any judge who has personal knowledge of a case prior to trial, as in the above Plaintiffs case, and any judge who takes part in the accusatory process of the States Prosecution of a criminal case? Why would they intentionall defeat the Safeguards of Due Process?

These are some of the questions the Plaintiffs bring forth for this court to review and adjudicate as per the U.S. Constitution and precedent U.S. Supreme Court decisions.

The Chief Justice for Montana and the other Justices for the Montana Supreme Court, need to explain to the Nation exactly why they are still attempting to cover up the fact that the Montana District Courts are violating the Constitution and laws of this country, and that Montana is not a soveriegn state. Why the Plaintiffs in each of their Judicail District Courts and in their cause numbers had these rights disregarded by the court who should have been allowed the Due Process of Law as the U.S. Supreme Court has already decidede.

Why is this Court of Montana and the State Courts silent to this matter?

The tyranical reign over the Judicial Branch and its denial of Justice is over. if this matter is adjudicated as per the U.S. Constitution. With all of the Montana Judicial and 'Lawyer Class' busted for their criminal denial of justice to those they accuse of offenses and ignore Due Process. Hopefully the Federal Authorities will now investigate the Plaintiffs claim as accurate and then adjudicate this matter in favor of the Plaintiffs and the Constitutions of the United States and Montana to which each judge has sworn to protect. That this court will meter out the Justice that the State of Montana Judicial System deny's to the accused who appears before these duty bound judges for Justice.

## IX. RELIEF

The Plaintiff ask this Federal Court for Full Disclosure and exposure of the unconstitutional enterprise that is the Montana Judicial System to the People of this Great Nation and its People in Montana, and for this court to release each Plaintiff from Montanas unconstitutional conviction and the resultant incarceration in Montana State Prison or its other detention facilities due to the same constitutional violations, that are the essence of this 28 USC §2254 action, en masse, with the total and complete exoneration of each Plaintiff without Prejudice.

Dated this        day of          , 2018,

With the following signatures the Plaintiffs hereby verify that each has read and agree with this Petitions contents as their own as written by the Plaintiffs wholely.

1) _____
2) James Colburn
3) Willie R
X 4) Donald Manning
X 5) _____
6) _____
7) Bernard Fitzpatrick
8) Tim Lewis
9) Joshua Dicken
10) Charles Mееman

-32-

Signatures continued from page 32

11) _Joshua Lewis_

12) _William Egan_

X 13) _Timothy Hawton_

X 14) _[illegible]_

15) _James Coy_

16) _Brian Holm_

X 17) _Thomas A. Task_

18) _Bob Moore II_

— 19) _Phillip Pierce_

X 20) _Larry Burleson_

21) _[illegible]_

22) _Statdud Britte_

X 23) _Jorge J Marrero_

24) _Davion Jones Jr._

25) _Jacob Palmer_

26) _Michael McNulty_

27) _Brett Lockhart_

28) _[illegible]_

29) _[illegible]_

30) _[illegible]_

31) _____

32) _____

33) _____

34) _____

35) _____